[Cite as *Dudley v. Dudley*, 2014-Ohio-3992.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| THOMAS M. DUDLEY, et al. | : | |
| Plaintiffs-Appellees, | : | CASE NO. CA2013-09-163 |
| | : | O P I N I O N |
| - vs - | | 9/15/2014 |
| | : | |
| TERRY DUDLEY, | : | |
| Defendant-Appellant. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2006-12-4689


Davidson Law Offices, Timothy A. Garry, Jr., 127 North Second Street, Hamilton, Ohio 45011, for plaintiff-appellee, Thomas M. Dudley

Aronoff, Rosen & Hunt, Edward P. Akin, 2200 U.S. Bank Tower, 425 Walnut Street, Cincinnati, Ohio 45202, for defendant-appellant


**RINGLAND, P.J.**

{¶ 1} Defendant-appellant, Terry Dudley, appeals a contempt sanction imposed by the Butler County Court of Common Pleas.

{¶ 2} Terry and plaintiff-appellee, Thomas Dudley, are brothers who were co-owners of two companies that built, owned, and rented residential properties to college students. At some point, the brothers had a disagreement that eventually led to legal action, with each

brother requesting a judicial dissolution of their companies. The trial court appointed a receiver to oversee the dissolution. On November 17, 2008, the trial court ordered Terry to pay the receiver $496,427.61 that Terry received from the sale of two houses he built as part of his partnership with Thomas. However, the order did not reflect the setoffs due Terry for labor and materials, which were to be determined by the receiver at a later date.

{¶ 3} On April 23, 2009, the trial court found Terry in contempt for failing to comply with its November 17, 2008 order. The trial court ordered Terry to pay the receiver $496,427.61 by May 1, 2009. The trial court further ordered that if Terry failed to pay the receiver by May 1, 2009, he would incur sanctions of $100 per day for the first 30 days and $200 per day after that for each day he failed to abide by the court's order. The trial court permitted Terry to submit evidence to the receiver of any setoff or credit that he claimed was due him, and ordered the receiver to determine the amount of any setoff owed to Terry.

{¶ 4} On November 10, 2009, the trial court considered the setoffs that Terry was owed and determined that Terry was obligated to pay the receiver $151,367, rather than $496,427.61, for the proceeds from the sale of the two houses. The trial court ordered Terry to pay $151,367 within two weeks, and stated that if he failed to do so, the sanction would be $100 per day for the first 30 days and $200 per day thereafter.

{¶ 5} On May 7, 2010, the trial court found Terry in contempt for his failure to comply with the November 10, 2009 order, and ordered him to pay the receiver $151,367 by May 14, 2010. The trial court further ordered that if Terry failed to pay the receiver by May 14, 2010, Terry would be sentenced to 30 days in jail. On May 14, 2010, Terry moved for a stay of the trial court's May 7, 2010 order, and further requested that any supersedeas bond requirement be limited to $138,007, which Terry claimed represented the amount owed the receiver after crediting him with an additional setoff. On May 25, 2010, the trial court held a hearing on Terry's motion for a stay, and agreed to stay the proceedings on the condition that Terry pay

a $201,000 supersedeas bond, which Terry paid in order to avoid jail time.

{¶ 6} Terry then filed an appeal of the trial court's order. During the pendency of the appeal, the parties filed a joint motion to dismiss the case pursuant to Civ.R. 41. Although the trial court ordered that the case be dismissed and the receivership dissolved, the court specifically reserved the contempt sanctions imposed on Terry.

{¶ 7} This court ultimately dismissed Terry's appeal for lack of a final appealable order after finding that the issue was not ripe for review because the trial court had not actually imposed a jail sentence on Terry, but, instead, merely stated that a 30-day jail sentence would be imposed on Terry if he failed to pay the receiver $151,367 by May 14, 2010. *Dudley v. Dudley*, 12th Dist. No. CA2010-05-114, 2012-Ohio-225 ("*Dudley I*").

{¶ 8} Once this court dismissed Terry's appeal, the trial court filed an entry imposing contempt sanctions on Terry. The entry indicates that Terry was ordered to pay the receiver $151,367 by May 14, 2010 and that he failed to do so. The trial court then noted that it had imposed the outstanding 30-day jail sentence, and that Terry posted a supersedeas property bond in order to avoid serving jail time. Terry then began the appellate process anew by appealing to this court the trial court's finding of contempt and imposition of sanctions. *Dudley v. Dudley*, 12th Dist. Butler No. CA2012-04-074 ("*Dudley II*").

{¶ 9} After the dismissal of Terry's appeal in 2012, this court subsequently revisited and overruled its decision in *Dudley I*, finding instead that a contempt issue is a final appealable order despite the ability to purge so long as the court has imposed a penalty or sanction. *Hetterick v. Hetterick*, 12th Dist. No. CA2012-02-002, 2013-Ohio-15. Accordingly, in *Dudley II* this court found that a final appealable order existed after the trial court found Terry in contempt and imposed a penalty. On March 11, 2013, this court affirmed the trial court's entry finding Terry in contempt and imposing a 30-day sentence against him.

{¶ 10} Terry again sought a stay from the imposition of the sentence. On August 28,

2013, the trial court denied Terry's motion to stay imposition and ordered that he be remanded to the Butler County Sheriff to serve 30 days in jail for his contempt. The trial court's entry and decision was filed on August 30, 2013. Terry's subsequent motion to stay his contempt sentence was granted by this court on September 6, 2013.

{¶ 11} Terry now appeals the imposition of the August 30, 2013 contempt sanction, raising three assignments of error for our review. For ease of discussion, Terry's assignments of error will be discussed together.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED BY IMPOSING WHAT AMOUNTED TO A CRIMINAL CONTEMPT SENTENCE WITHOUT PROCEEDINGS TO SECURE EVIDENCE OF CRIMINAL CONTEMPT BEYOND A REASONABLE DOUBT.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE TRIAL COURT ERRED BY IMPOSING A NON-CONDITIONAL SENTENCE APPROPRIATE ONLY IN A CRIMINAL CONTEMPT CONTEXT.

{¶ 16} Assignment of Error No. 3:

{¶ 17} IN THE ALTERNATIVE, IF THE TRIAL COURT IS NOW STATING THAT DUE TO THE TERMINATION OF THE RECEIVER AND THE SETTLEMENT OF THE UNDERLYING CASE, THE AMOUNT AT ISSUE CAN NO LONGER BE PAID, THEN IT REALLY IS IMPOSSIBLE FOR TERRY DUDLEY TO COMPLY WITH THE EARLIER ORDER.

{¶ 18} This court will not reverse a trial court's ruling on a motion for contempt absent an abuse of discretion. *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 12, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10 (1981). An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219

- 4 -

(1983).  When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court.  *Cottrell* at ¶ 12.

{¶ 19} It is well established that where the parties settle the underlying case that gave rise to the civil contempt sanction, the contempt proceeding is moot, since the case has come to an end.  *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 451-452, 31 S.Ct. 492, 502 (1911).  Here, the underlying case was dismissed during the pendency of the appeal in *Dudley I*.

{¶ 20} Therefore, the first relevant inquiry is whether the contempt proceedings were civil or criminal in nature.  If the proceedings were civil, then the trial court lacked jurisdiction to impose the contempt sanctions, regardless of whether that court specifically attempted to exclude the contempt proceedings from the dismissal of the underlying suit.  On the other hand, if the contempt proceedings were criminal in nature, then "the dismissal of an underlying civil action does not divest a court of common pleas of jurisdiction to conduct criminal contempt proceedings."  *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 556 (2001).

{¶ 21} In *Corn*, the Ohio Supreme Court set forth the analysis for distinguishing between civil and criminal contempt.

> Contempt is defined in general terms as disobedience of a court order. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions. Contempt proceedings are often classified as sui generis, neither civil nor criminal. However, most courts distinguish between civil and criminal contempt proceedings.  The distinction is usually based on the purpose to be served by the sanction. Thus, in determining whether a contempt is civil or criminal, the pertinent test is what does the court primarily seek to accomplish by imposing sentence?
>
> Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order.  Criminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court. Thus, civil contempts are characterized as violations against the

party for whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court.

*Id.* at 554-5 (internal citations and quotations omitted.)

{¶ 22} In the present case, Terry was ordered to pay certain amounts to the receiver on numerous occasions. Terry's failure to do so resulted in the trial court finding him in contempt on multiple occasions. Those contempt orders began as civil in nature, ordering only that Terry pay the amount owed. However, under the facts of the present case, we find that the civil contempt proceedings became criminal in nature when the trial court imposed the jail sentence on Terry. Terry argues that it was error for the trial court to make it impossible to purge his contempt. However, that impossibility would serve only as further evidence of the shift from civil to criminal contempt. Here, the court was no longer seeking to coerce Terry to obey an order, but rather was penalizing Terry and vindicating the court's authority as a result of his continued refusal to comply with the court's orders.

{¶ 23} We note that this court in *Dudley II* found that the contempt survived because of the trial court's specific exclusion of the contempt proceedings from the underlying case. What *Dudley II* should have specified was that the contempt proceeding survived insofar only as it related to Terry's criminal contempt. The civil contempt relating to the order that Terry pay a certain amount to the receiver was rendered moot by the parties' dismissal of the underlying case. *Corn*, 90 Ohio St.3d at 555.

{¶ 24} We next turn to the issue of whether Terry was afforded the proper procedural due process safeguards under R.C. 2705.05. Pursuant to R.C. 2705.05, Terry was entitled to a hearing wherein the trial court would determine his guilt or innocence. Terry argues that the trial court failed to hold a hearing where it "expressly found criminal contempt on showing beyond a reasonable doubt." However, the trial court's May 7, 2010 entry imposing the jail sentence states that a hearing was held on April 29, 2010. Further, the trial court's

September 5, 2013 entry denying Terry's motion to stay sentence states that a contempt hearing was also held in May 2010. A transcript of the April 29, 2010 and May 2010 hearings were not provided to this court.

{¶ 25} As this court has repeatedly explained, "[s]ince the appealing party bears the burden of showing error in the underlying proceeding by reference to matters in the record, the appellant has a duty to provide a transcript for appellate review." *State v. Williams*, 12th Dist. Clermont No. CA2012-08-060, 2013-Ohio-1387, ¶ 18; *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980); see App. R. 9(B); see also App. R. 16(A)(7). "Where portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus has no choice but to presume the regularity or validity of the lower court's proceedings and affirm." *Knapp* at 199; *Williams* at ¶ 18; *State v. Gregory*, 12th Dist. Clinton No. CA2006-05-016, 2006-Ohio-7037, ¶ 3. This is true regardless of whether the transcript exists or is available. *Fender v. Fender*, 12th Dist. Brown No. CA91-04-007, 1992 WL 86497 (Apr. 27, 1992).

{¶ 26} Presuming the regularity of the trial court's April 29, 2010 and May 2010 hearings, we cannot find that the trial court erred in finding Terry guilty beyond a reasonable doubt of criminal contempt.

{¶ 27} In light of the foregoing, having found that (1) the civil contempt proceedings shifted to criminal proceedings, (2) Terry was afforded hearings on the criminal contempt, and (3) we presume the regularity of those hearings because transcripts were not provided to this court, Terry's assignments of error are overruled.

{¶ 28} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.